IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

KATHRYN BIELSKI,              )
                              )
        Plaintiff,            )
                              )      CIVIL ACTION NO.
        v.                    )      1:12cv1049-MHT
                              )           (WO)
ALFRED SALIBA CORPORATION,    )
                              )
        Defendant.            )

OPINION AND ORDER

Plaintiff Kathryn Bielski fell from the attic of a house she was renting, landing on the concrete floor of her garage. She brought this suit against defendant Alfred Saliba Corporation, the company which built the house. She claims that her fall was the result of the company's negligent and wanton lack of care in constructing the attic. Jurisdiction is properly invoked pursuant to 28 U.S.C. § 1332 (diversity).

This case is now before the court on Alfred Saliba Corporation's motion for summary judgment. For the reasons discussed below, the motion will be denied.

## I. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. BACKGROUND

In 2003, Alfred Saliba Corporation built a house in Dothan, Alabama. The city issued all required permits and a certificate of occupancy for the home. A family purchased the home and lived there for three years, after which they rented the home to others. Bielski began

2

renting the house, along with her then-fiancé, in August 2010.

The house has an attic space above the garage. At the time of construction, the applicable building codes required that there be some form of access to the attic. To satisfy this requirement, Alfred Saliba Corporation installed "disappearing stairs," a pull-down ladder, which led from the garage to the attic. Speigner Dep. (Doc. No. 25-9) at 117:1.

In much of the attic, the flooring consists of merely a system of wood trusses. The Sheetrock ceiling for the rooms below the attic is nailed to the bottom of the trusses. Sheetrock is not constructed to bear weight and it is not safe to step on it. Immediately to the right of the ladder into the attic, the company had attached "OSB sheathing," plywood-like boards on which a person can safely stand. Bodo Dep. (Doc. No. 25-7) at 75:19-76:12. The plans for the home called for the builders to install three pieces of these plywood-like boards in the attic "if

space available." Speigner Dep. (Doc. No. 39-1) at 117:1-2. There were only two pieces of these plywood-like boards actually installed in the attic, covering an area of 64 square feet. There is a height difference between the plywood-like boards and the Sheetrock, but there is no barrier or marking at the edge of the board.

On the ladder to the attic, there is a warning label that says in large, highlighted print "BEWARE OF OVERHEAD HAZARDS." Cornelius Kugler Dep. (Doc. No. 25-3), Dep. Ex. 7. The label also has a diagram of a stick figure falling through the ceiling, and says in smaller print:

> "Do not stand, sit, or store materials on the ceiling or insulation covering the ceiling. You can fall through the ceiling even though it looks solid! Only the wooden joists can support weight."

Id.

On the morning of December 3, 2010, Bielski went to the attic to retrieve coats that had been placed in storage there. She had never been in an attic before that morning. Standing on the plywood-like boards, she took "a small step" off the boards and onto the Sheetrock

4

ceiling in order to reach the coats. Bielski Dep. (Doc. No. 25-6) at 30:9-10. The Sheetrock collapsed under Bielski's weight, and she fell to the concrete floor of the garage below.

Bielski claims that the fall paralyzed her from the waist down and caused a brain injury leading to memory loss. These injuries have allegedly interfered with her day-to-day life and caused her significant emotional distress.

Bielski filed this lawsuit on November 30, 2012.


## III. DISCUSSION

Alfred Saliba Corporation presents four arguments for summary judgment. First, the company argues that Bielski's claims are barred by a statute of repose on claims relating to home construction. Second, the company argues that it could not have been negligent because a homebuilder has no duties to any individual with whom it is not in privity. Third, the company argues that, even

if it was somehow negligent in building the attic, Bielski was contributorily negligent. Finally, the company argues generally that Bielski does not show sufficient evidence for the wantonness claim to reach the jury.[1]

## 1. Statute of Repose

Alfred Saliba Corporation argues that Bielski's claims are barred by 1975 Ala. Code § 6-5-218, which established a seven year statute of repose for claims against a builder for construction on real property. (The house was built in 2003, and this suit was not brought until eight years later, in 2011.) However, as Bielski

---

1. In its reply brief to Bielski's opposition to its summary-judgment motion, Alfred Saliba Corporation makes an additional assertion that the company simply was not negligent. Bielski has not had an opportunity to respond to this new argument, and therefore it would be inappropriate for the court to grant summary judgment on that basis. See First Specialty Ins. Corp. v. 633 Partners, Ltd., 300 F. App'x 777, 788 (11th Cir. 2008). Even if that was not an an issue, the company does not present a legal argument as to why that is true as a matter of law, and the assertion is unsupported on the record before the court.

argues and the company does not dispute, § 6-5-218 was ruled unconstitutional by the Alabama Supreme Court 30 years ago. Jackson v. McDowell-Wellman Engineering Corp., 435 So.2d 725 (Ala. 1983).

Admittedly, Alabama has a new statute of repose for construction of real property: 1975 Ala. Code § 6-5-221. While Alfred Saliba Corporation does not rely on this statute, the statute would not benefit the company anyway.

At the time of Bielski's fall, § 6-5-221 set a 13-year statute of repose. 1994 Ala. Laws Act 94-138 (H.B. 341). The statue was amended, effective September 1, 2011, to shorten the statute of repose to seven years. 2011 Ala. Laws Act 2011-519 (S.B. 59). Bielski brought suit in November 2011. Thus, the question becomes whether the statute of repose at the time that the claim accrued or at the time that suit was filed would be applicable. Although the Alabama courts do not seem to have squarely addressed the issue, their caselaw makes clear that the

7

statute of repose at the time the claim accrued, not the time that suit was brought, would apply.

With regard to the retroactive application of statutes, Alabama law differentiates between substantive statutes and remedial statutes. For substantive statutes, "retrospective application of a statute is generally not favored, absent an express statutory provision or clear legislative intent" to the contrary. Jones v. Casey, 445 So. 2d 873, 875 (Ala. 1983). Remedial statutes, however, do apply retroactively by default, since they "impair no contract or vested right, and do not disturb past transactions, but preserve and enforce the right and heal defects in existing laws prescribing remedies." Id. (quoting Dickson v. Ala. Mach. and Supply Co., 18 Ala. App. 164, 165 (1921)). Statutes of limitations are remedial statutes under Alabama law, and as a result, they apply retroactively. Street v. City of Anniston, 381 So.2d 26, 29 (Ala. 1980). That is, in general, the court

applies the statute of limitations in effect when suit is brought, not when a claim accrued.

In order to determine whether the rule for retroactive application of statutes of limitations should apply to statutes of repose, it is necessary to understand the difference between the two. Statutes of limitations "govern how long a claimant can bring an action after one has accrued; [statutes of repose] govern whether an action can be brought regardless of whether it has accrued. It is possible for an action to be barred by a statute of repose before it ever accrues, effectively preventing a cause of action from ever arising." 4 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1056 at 89 n. 3 (3d Ed. Supp. 2013)

The Alabama Supreme Court emphasized this difference while discussing a predecessor to the current statute of repose for construction of real property. The court held that "the seven-year provision is a limitation in form

9

only; in substance and effect, it is a grant of immunity--the abolition of a substantive right." <u>Bagby Elevator & Elec. Co., Inc. v. McBride</u>, 291 So.2d 306, 311 (Ala. 1974). Since statutes of repose such as § 6-5-221 are substantive and not remedial law, they apply only prospectively--to claims which accrue after the effective date of the statute.

Bielski's claim accrued in 2010, when the applicable statute of repose was 13 years. She brought suit well within the 13-year time limit. Therefore, she is not barred by the statute of repose in § 6-5-221.

## 2. Caveat Emptor

Alfred Saliba Corporation argues that it could not have breached a duty to Bielski because homebuilders owe a duty to only the first buyer of a house, not to any subsequent buyer or resident. This argument misstates Alabama law.

The company cites a line of cases in which subsequent owners of homes sued homebuilders for negligence based on the damage to their homes: <u>Whatley v. Reese</u>, 875 So. 2d 274 (Ala. 2003), <u>Wooldridge v. Rowe</u>, 477 So. 2d 296 (Ala. 1985), and <u>Wells v. Clowers Const. Co.</u>, 476 So. 2d 105 (Ala. 1985). In each of these cases, the Alabama Supreme Court upheld a <u>caveat emptor</u> policy. Homeowners can recover from the initial builder for property damage only if they are in privity with the builder.

Unfortunately for the company, the Alabama Supreme Court established a different rule for contractors' liability for personal injury of third parties. "While the rule of <u>caveat emptor</u> is still a valid defense in an action based on the <u>sale</u> of a used home, this rule has no applicability to a theory of liability based on personal injury caused by <u>negligent construction</u>, whether in regard to new homes or used homes." <u>McFadden v. Ten-T Corp.</u>, 529 So. 2d 192, 201 (Ala. 1988) (emphasis in original); <u>see also</u> <u>Collins v. Scenic Homes</u>, 30 So.3d 28,

11

33 (Ala. 2009) (recognizing potential liability of a builder for personal injury of tenants due to faulty design of apartment building). Bielski is alleging that the company's negligent construction choices led to her personal injury. Her case falls outside the <u>caveat emptor</u> rule. Her privity with Alfred Saliba Corporation, or lack thereof, is irrelevant.

### 3. Contributory Negligence

Alfred Saliba Corporation also argues that Bielski was contributorily negligent as a matter of law. Bielski responds that contributory negligence requires a "conscious appreciation of the danger at the moment the incident occurred." <u>Horn v. Fadal Machining Centers, LLC</u>, 972 So. 2d 63, 75 (Ala. 2007). The company replies that there is no such requirement, and that the court can find contributory negligence as a matter of law if "all reasonable people would logically have to reach the conclusion that the plaintiff was contributorily

negligent." <u>Serio v. Merrell, Inc.</u>, 941 So. 2d 960, 964
(Ala. 2006).

At first blush, it would appear that the resolution
of this dispute about what the contributory-negligence
defense requires would be easy. This court need only look
up the elements for contributory negligence under Alabama
law and then determine whether Alfred Saliba Corporation
is entitled to summary judgment based on these elements,
with the evidence read in favor of Bielski. <u>Matsushita</u>,
475 U.S. at 587. However, it appears that Alabama does
not follow this straightforward approach when confronting
a summary-judgment motion on a contributory-negligence
defense.

Alabama appears to recognize both of the defenses of
contributory negligence and assumption of risk. Alabama
generally follows the Restatement (Second) of Torts,
including in the context of assumption of risk. <u>Ex Parte</u>
<u>Barran</u>, 730 So. 2d 203, 206 (Ala. 1998) (adopting
Restatement (Second) of Torts § 496A); <u>see also  Keller</u>

13

v. Kiedinger, 389 So. 2d 129, 132 (Ala. 1980) (adopting § 390 for the defense of contributory negligence in a bailee's negligent entrustment claim).

The Restatement defines contributory negligence as "conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, and which is a legally contributing cause co-operating with the negligence of the defendant in bringing about the plaintiff's harm." Restatement (Second) of Torts § 463 (1965). Assumption of risk, on the other hand, occurs when a plaintiff "voluntarily assumes a risk of harm arising from the negligent or reckless conduct of the defendant." Id. at § 496A. In "[t]he great majority of the cases involving assumption of risk ... the defense overlaps that of contributory negligence." Restatement (Second) of Torts § 496A, cmt. d (1965). However, there is one major difference between the two theories: where assumption of risk concerns the plaintiff's subjective approach to a risk, contributory

negligence, like negligence in general, adopts an objective standard.

In several cases, the Alabama Supreme Court appears to hold that a defendant is not entitled to summary judgment on a contributory-negligence defense unless it can show that it is entitled to summary judgment on an element that is part of the assumption-of-risk defense: "that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred." Horn v. Fadal Machining Centers, LLC, 972 So. 2d 63, 75 (Ala. 2007); see also Hicks v. Commercial Union Ins. Co., 652 So. 2d 211, 219 (Ala. 1994); Smith v. U.S. Const. Co., 602 So. 2d 349, 350 (Ala. 1992). Thus, it would appear that the state court is conflating the contributory-negligence defense with the assumption-of-risk defense. Indeed, this appearance of conflating of the two defense makes the reading of these cases hard to follow.

However, in <u>Hannah v. Gregg, Bland & Berry, Inc.</u>,840 So. 2d 839 (Ala. 2002), the Alabama Supreme Court attempted to clarify what it really intended:

> "The proof required for establishing contributory negligence as a matter of law should be distinguished from an instruction given to a jury when determining whether a plaintiff has been guilty of contributory negligence. A jury determining whether a plaintiff has been guilty of contributory negligence must decide only whether the plaintiff failed to exercise reasonable care. We protect against the inappropriate use of a summary judgment to establish contributory negligence as a matter of law by requiring the defendant on such a motion to establish by undisputed evidence a plaintiff's conscious appreciation of danger."

<u>Id</u>. at 860-61. Thus, the additional element (conscious appreciation of danger) applies only when the defendant is seeking judgment as a matter of law (including summary judgment) on a contributory-negligence defense, and not as a part of the defense when it is being resolved by the factfinder, that is, the jury. <u>See also</u> <u>QORE, Inc. v. Bradford Bldg. Co., Inc.</u>, 25 So. 3d 1116, 1126 (Ala.

2009) (using the "conscious appreciation" element for a mid-trial motion for judgment as a matter of law); H.R.H. Metals, Inc. v. Carl Miller, 833 So. 2d 18, 26-27 (Ala. 2002) (granting a new trial because a court included "conscious appreciation of risk" in contributory-negligence jury instructions).

Unfortunately, Hannah does not resolve the matter fully for this court. Because this court is sitting in diversity, this heightened requirement for resolution of contributory-negligence defenses on summary judgment raises questions under the Erie doctrine as to whether this court should apply that requirement, or merely the straightforward Rule 56 analysis, unheightened. In Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), the Supreme Court defined the appropriate role for federal courts sitting in diversity: to apply state substantive law, while using uniform federal rules of procedure. Id. at 78.

Although the line between substantive and procedural law may appear to be superficially clear, federal courts

17

have struggled in the decades since <u>Erie</u> with a wide range of state-law rules that incorporate both substantive and procedural elements. <u>See, e.g.</u> <u>Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.</u>, 559 U.S. 393 (2010) (addressing a limitation on statutory penalties in class actions); <u>Gasperini v. Center for Humanities, Inc.</u>, 518 U.S. 415 (1996) (addressing a standard of review for excessive damages).

Alabama's heightened standard for summary judgment on a contributory-negligence defense is a new example of the <u>Erie</u> problem. On the one hand, the Federal Rules of Civil Procedure and subsequent caselaw establish a set of procedures for a federal court to undertake in adjudicating a summary judgment motion--procedures which do not seem to allow for differing legal standards for the court and the factfinder. On the other hand, the Alabama rule incorporates substantive-law values: balancing the harsh, contributory-negligence regime with a apparent commitment to favoring plaintiffs' ability to

respond to contributory-negligence defenses before the factfinder, that is, the jury.  In other words, under Alabama law, when resolving a contributory-negligence defense on summary judgment, the thumb is on the plaintiff's side of the scale more than it otherwise would be, if at all, in the resolution of the defense.

Fortunately, this court need not resolve this difficult <u>Erie</u> question, for, regardless as to whether the summary-judgment standard is heightened or not, Alfred Saliba Corporation is not entitled to summary judgment on its contributory-negligence defense.

Alfred Saliba Corporation argues that Bielski did not take reasonable care in where she stepped, given her unfamiliarity with attics and the warning label on the ladder. However, the label warned of an attic that did not have any flooring, and Bielski's attic had partial plywood-like flooring. Furthermore, Bielski claims that the Sheetrock ceiling resembled the plywood-like flooring she was standing on, which led her to step onto the

ceiling. Given these facts, a reasonable juror could "logically reach the conclusion" that Bielski was not negligent in stepping onto the Sheetrock. <u>Serio</u>, 941 So. 2d at 964. Therefore, the court cannot find that Bielski was contributorily negligent as a matter of law, even under the standard that Alfred Saliba Corporation asks this court to apply, that is, the one that an Alabama court would give a jury.

### 4. Wantonness

Finally, Alfred Saliba Corporation contends that Bielski has presented insufficient evidence that the company acted wantonly for that claim to go to the jury.

"Wantonness is a question of fact for the jury, unless there is a total lack of evidence from which the jury could reasonably infer wantonness." <u>Cash v. Caldwell</u>, 603 So. 2d 1001, 1003 (Ala. 1992). The Alabama Code defines wantonness as, "Conduct which is carried on with a reckless or conscious disregard of the rights or

safety of others." 1975 Ala. Code § 6-11-20(b)(3). Furthermore, the plaintiff must show that the defendant "consciously or deliberately engaged in" that conduct. 1975 Ala. Code § 6-11-20(a). However, "it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff." Alfa Mut. Ins. Co. V. Roush, 723 So. 2d 1250, 1256 (Ala. 1998).

The company contends that Bielski cannot, as a matter of law, present facts sufficient for the jury to infer wantonness. In support of this argument, the company points the court to Ex Parte Essary, 992 So. 2d 5 (Ala. 2007). In Essary, the court affirmed summary judgment on a claim that a driver was wanton for trying to "shoot the gap" between two vehicles, resulting in a collision. Id. at 12. Alfred Saliba Corporation argues that this was "much more culpable conduct" than the company's choices in attic design and construction. Br. in Supp. of Summ. J. (Doc. No. 24) at 22. Therefore, the company argues

21

that, if Essary's conduct was not wanton, its conduct could not have been wanton either.

Alfred Saliba Corporation's argument misunderstands _Essary_. The company quotes in its brief: "Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability." Br. in Supp. of Summ. J. (Doc. No 24) at 22 (quoting _Essary_, 992 So. 2d at 9. Therefore, an argument about whether Essary's behavior was more culpable than the company's is irrelevant. The question instead is whether the behavior was consciously undertaken with a reckless disregard for others' safety. The _Essary_ court held that, absent special circumstances, courts "do not expect an individual to engage in self-destructive behavior." _Id_. at 12. If Essary had intentionally driven into the road, thinking he may not be able to fit between the cars, he would have been injured himself. _Id_. _See also_ _Jinright v. Werner_

22

Enterprises, 607 F. Supp. 2d 1274, 1276-77 (M.D. Ala. 2009) (Thompson, J.) (discussing Essary). A failure to build an adequately safe attic would not injure the company and would be unlikely to injure its employees, who as construction workers would be familiar with attic safety. Essary is a red herring.

It is more instructive to examine several cases with more similar facts in which the Alabama Supreme Court has discussed wantonness. In Southeast Envir. Infrastructures, LLC v. Rivers, 12 So. 3d 32 (Ala. 2008), the plaintiff had been injured when a pipe that was being moved overhead fell from its canvas strap. The court found that there was evidence that "[the defendant]'s employees had knowledge of proper safety procedures ... but knowingly disregarded those safety rules and regulations." Id. at 47-48. In Lance, Inc. V. Ramanauskas, 731 So. 2d 1204 (Ala. 1999), the Court held that a vending machine company was wanton for failing to test that an electrical outlet was grounded. Lance's

management was aware that people had been electrocuted by ungrounded machines, but the company's employee had not followed safety manual provisions requiring that he test outlets and had not been provided a tester that cost $ 5. Id. At 1211-12.

Bielski asserts that the company's construction of the attic was wanton for several reasons, including the following:

- The company could have built the attic so that so that it was clearer where the plywood-like boards ended, making it less likely that a person would step off of them onto the Sheetrock.

- It was foreseeable that a resident of home Bielski rented would use the attic space for storage.

- Prior to Bielski's fall, company officials were aware of five or six instances in which people had stepped or fallen through Sheetrock ceilings.

- The design plan for the house called for three plywood-like boards "if space available." Liddon Dep. (Doc. No. 39-2) at 159:5. Bielski asserts that there was space available. Nonetheless, only two such boards were used.

- An additional board would have cost less than $ 25.

- The company did not have a practice of inspecting the attics of their houses during final inspection of the houses.

Comparing this evidence to the examples of wantonness in Lance and Rivers, it is clear that there is some "evidence from which a jury could reasonably infer wantonness." Cash, 603 So. 2d at 1003. Admittedly, Bielski is not certain to prove that the company acted wantonly in its construction of the attic; but that is a question of fact for the jury to decide.[2]

_____

2. As an aside, Bielski introduced an expert affidavit from Clinton J. Ford to address the issues of contributory negligence and wantonness. Alfred Saliba Corporation objects to Ford's expert testimony, arguing that he is not qualified to offer expert opinions on residential construction. See Fed. R. Evid. 702; Kumho Tire Co., Ltd. V. Carmichael, 526 U.S. 137 (1999). It contends that Ford is unqualified because he has built few houses in the course of his career and has built none in Alabama or under the building codes with which the company was obligated to comply. The company's arguments are unconvincing.

"[C]ar mechanics often testify to the cause of engine failure, even when they did not design the failed component, see, e.g., Salter v. Westra, 904 F.2d 1517, (continued...)

\* \* \*

Accordingly, it is ORDERED that the Alfred Saliba Corporation's motion for summary judgment (doc. no. 22) is denied.

DONE, this the 16th day of October, 2013.

        /s/ Myron H. Thompson        
UNITED STATES DISTRICT JUDGE

------------------------

    2. (...continued)
1520 (11th Cir.1990), and gun experts can testify to rifle mechanics and design, even when they had no role in developing the parts at issue, see, e.g., Peterka v. McNeil, 532 F.3d 1199, 1202 (11th Cir.2008)." Ferguson v. Lear Siegler Servs., Inc., 2012 WL 1058983 at *5 (M.D. Ala. 2012) (Thompson, J.).

    Similarly, in this case, Ford has established his credentials in other ways. He has three degrees and many certifications in various aspects of construction. Ford CV (Doc. No. 39-3) at 18-19. Although Alfred Saliba Corporation is right to point out that Ford has not built many homes, he has renovated several and has participated in the construction of many other buildings. Id. Perhaps most importantly, Ford is also a home inspector, who makes his career out of examining potentially unsafe aspects of homes, even if he is not building them himself. Id at 20.

    In the end, although Ford is qualified to offer expert opinions, the court did not find his opinions necessary to reach the conclusions in this opinion.